IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:12-CV-37-RLV

| | | |
|---|---|---|
| OLIVIA BURLESON APPLING, et. al., | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Memorandum and Order |
| | ) | |
| ALLEGHANY COUNTY, et. al., | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion to Dismiss and all related materials. (Doc. 47-58).

## I. PROCEDURAL AND FACTUAL HISTORY

On April 2, 2012, Plaintiffs Olivia Burleson Appling, et. al.,[1] ("Plaintiffs") by and through their legal counsel filed suit against Defendants Alleghany County, Ashe County, Avery County, Gary L. Blevins, Larry Cox, Nathan A. Miller, New River Service Authority, Kenny R. Poteat, William Sands, Watauga County and Wilkes County ("Defendants"), pursuant to 28 U.S.C. § 1331 and Title 42 of the Code of Federal Regulations alleging fraud, common law fraud, fraud by concealment and promissory fraud; conversion; detrimental reliance; fraudulent

---

[1] Other plaintiffs include: Andrea Baker, Christine A. Behrend, Amy L. Billings, Karen S. Brown, Nate Capps, Surya K. Challa, Cheryl H. Church, Nancy Michelle Cleary, Barbara Marlene Cockerham, Jennifer E. Combs, Robert M. Cox, Kathleen Joyce Craver, Graham Doege-Osler, Sarah H. Dunagan, Stephanie Dvorak, Kimberly C. Edwards, Sonya Farr, Rhonda Fields, Virginia Gardiner, Mat Gould, Christina Griffin, Claudia Gross, Tamara H. Guess, Shannon Haney, Denise Harrison, Murray Hawkinson, Lisa R. Hudgens, Amy Ikall, Adam Michael Jarrell, Curtis Johnson, Elizabeth Lawson, Justin Leonard, Michael A Leone, Jill Long, Lisbette R. Lundgren, Ashley McKinney, Heather McCroarty, Ida E. McNeil-Issacs, Monica Smith Mills, Rebecca Moretz, Martha Moxley, Jeanie Mull, Alisha Orren, Sarah Peters, Amie Shepperd Platt, Daniel Platt, Deborah Reese, Matthew T. Ross, Diane T. Ryder, Teresa Salmon, Carrie Shafer, Reid Smithdeal, Kendra Sweat, John Tate, Kathryn A. Thomas, James G. Thornton, Laura Tugman, Catrine E. Upchurch, Michael J. Vannoy, Valencia S. Vondran, Sandra Walker, Lori Watts, Robin M. Wyatt, and Joan Zimmerman.

inducement and breach of contract; breach of fiduciary duty; misappropriation of federal funds; conspiracy, aiding and abetting, and concerted action; and punitive damages. (Doc. 1/Pls.' Complaint).

On April 23, 2012, Plaintiffs filed an Amended Complaint, adding Plaintiffs including Julia H. Caveness, et. al.,[2] as well as a claim alleging Unfair or Deceptive Acts or Practices In or Affecting Commerce pursuant to North Carolina Unfair Trade Practices Act, N.C. GEN STAT. § 75-1.1, *et seq*. (2008). (Doc. 22/Pls.' Amended Complaint).

The facts as recited in Plaintiffs' Amended Complaint are as follows:

On or about November 5, 2006, Defendants entered into an Interlocal Agreement ("Agreement") pursuant to N.C. Gen. Stat. § 160A-461[3] to "facilitate joint and several provisions of the Services" mandated by Title 42 of the Code of Federal Regulations.[4] (*See id.* at 103). Pursuant to their Agreement, five North Carolina counties, Alleghany, Ashe, Avery, Watauga and Wilkes, created a five-member board ("Board") comprised of one member residing in each of the above-referenced counties. (*See id*. at 108). The Board then created an "unincorporated enterprise" named the New River Service Authority ("NRSA")[5], also known as the New River Behavioral Healthcare. (*Id.* at 106). The NRSA was created to act on behalf of the counties "to

---

[2] Other added plaintiffs include: Cassandra Eller, Donovan Farr, Janie Finnin, Roger Martin, Jamie McCoy, Justin G. Mikel, Peter Nicholas, Laurie R. Raffles, Lea Ann Richardson, Courtney Schenck, Marie Schindler, Judith Annette Taylor Ward, Jimmy Dale Wyatt, Jr.

[3] N.C. Gen. Stat. § 160A-461 provides that "any unit of local government in this State and any one or more other units of local government in this State... may enter into contracts or agreements with each other in order to execute any undertaking...agreements shall be of reasonable duration..."

[4] Plaintiffs point to Title 42 of the Code of Federal Regulations as the governing provision for these alleged unspecified "services" that the Agreement was required to perform. Plaintiffs do not reference a specific chapter within the Title and it is not clear what types of services Defendants were supposed to fund.

[5] NRSA is not registered with the North Carolina Secretary of State as a separate legal entity. According to the Amended Complaint, the NRSA's authority is derived from the Agreement.

act inter alia as their agent and perform acts that bind them as principals." (*Id*. at 109). Plaintiffs allege that pursuant to the Agreement state employees who transferred to NRSA would retain beneficial credit for all past service. Additionally, Defendants "promised to pay earned wage and wage benefits, as well as various other compensation and benefits, to NRSA employees." (*Id*. at 110).

Plaintiffs further allege that the federal government entrusted Defendants with millions of dollars to "pay for provisions of the Services mandated by federal law."[6] (*Id.* at 111). Plaintiffs stipulate that Defendants comingled the federal funds received with state and local funds, and then "converted and misappropriated" them to fund "an NRSA enterprise operated to provide all manner of support services to a large pool of problematic indigents . . . that go well beyond the services contemplated by Title 42." (*Id.*) Additionally, Plaintiffs allege that Defendants created a deficit within NRSA, and failed to file required audit reports and authorized questionable management practices. (*See id.* at 113-116). Plaintiffs made "requests for payment of such earned wages and wage benefits" but were advised that the Board decided not to pay. (*Id.* at 119). Lastly, Plaintiffs allege that the Interlocal Agreement requires that "all liabilities of NRSA shall be paid from its unobligated surplus and if said funds are not sufficient to satisfy such indebtedness, the remaining unpaid portion of the same shall be apportioned by the Counties . . . ." (*Id*. at 122).

On June 1, 2012, Defendants by and through counsel, filed a Motion to Strike pursuant to Rule 12(f) of the Federal Rules of Civil Procedure (Doc. 47), a Motion to Dismiss for Lack

---

[6] Plaintiffs allege that Defendants received federal money to pay for "services." However, Plaintiffs do not allege what these Services are, or what federal law mandates the use of these funds for said services.

Jurisdiction pursuant to Rule 12(b)(1) (Doc. 49), and a Motion to Dismiss for Failure to State a Claim pursuant to Rules 8, 9(b), and 12(b)(6) of the federal rules. (Doc. 51).

On June 18, 2012, Plaintiffs filed Memoranda in Opposition to the Motion to Strike, the Motion to Dismiss for Lack of Jurisdiction, and Motion to Dismiss for Failure to State a Claim. (Docs. 53-55).

On June 28, 2012, Defendants filed corresponding Replies. (Docs. 56-58).

On March 19, 2013, Plaintiffs filed another Motion to Amend / Correct Amended Complaint to Add and Withdraw Plaintiffs. (Doc. 59).

These matters are ripe for disposition. The Court first considers whether subject matter jurisdiction exists.

## II.  STANDARD OF REVIEW

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject matter jurisdiction may be raised at any time either by a litigant or the court. *See Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884). The Federal Rules of Civil Procedure anticipate this issue and provide that "[i]f the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

When a court considers its subject matter jurisdiction, the burden of proof is on the plaintiff. *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982). In *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, the Court of Appeals for the Fourth Circuit held as follows:

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists.

> The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.

945 F.2d 765. 768-69 (4th Cir. 1991) (internal citations omitted). Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. *United States v. North Carolina*, 180 F.3d 574, 580 (4th Cir. 1999).

### III. ANALYSIS

#### A. Subject Matter Jurisdiction

The Defendants' motion under Rule 12(b)(1) challenges the authority of this Court "to adjudicate the type of controversy involved in the action." *Carlisle v. United States*, 517 U.S. 416, 434-35 (1996) (internal quotations and citations omitted). Where, as here, jurisdiction is challenged on the basis that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based . . . all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as [it] would receive under a Rule 12(b)(6) consideration." *Adams*, 697 F.2d at 1219. Additionally, in ruling on the motion the Court may consider the pleadings as evidence on the issue and look beyond them without converting the motion to one for summary judgment. *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).

There are two methods of satisfying subject matter jurisdiction. The first method is presenting a federal question pursuant to 28 U.S.C. § 1331, and the second method is through diversity jurisdiction pursuant to 28 U.S.C. § 1332. This Court will first consider federal question jurisdiction.

### 1. 28 U.S.C. § 1331-Federal Question Jurisdiction

The federal courts have subject matter jurisdiction over cases "arising under" the Constitution, statutes, or treaties of the federal government. 28 U.S.C. § 1331. In determining whether a cause of action "arises under" federal law, the Court shall look to the plaintiff's "well-pleaded complaint." *See Franchise Tax Bd. of State California v. Constr. Laborers Vacation Trust for S. California*, 463 U.S. 1, 9-10 (1983). In other words, it must be clear from the face of the complaint either that 1) plaintiffs' "cause of action 'arises under' federal law;" or 2) a federal law is "an element, and an essential one of plaintiffs' cause of action." *See id.* at 11 *(citing Louisville & Nashville R.R. Co. v. Motley*, 211 U.S. 149, 154 (1908))(*citing Gully v. First Nat'l Bank,* 299 U.S. 109, 112 (1936)).

In considering the second method for creating federal question jurisdiction, jurisdiction may exist over a state law claim if "the state law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005); *Ormet Corp. v. Ohio Power Co.*, 98 F.3d 799, 806 (4th Cir.1996); *Merrell Dow*, *Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986) (The federal law in question must be "sufficiently central" to the claim in a well-pleaded complaint.)

Moreover, federal question jurisdiction is not established by the existence of a federal counterclaim or defense. *Vaden v. Discover Bank*, 129 S. Ct. 1262, 1272 (2009) (jurisdiction cannot rest on an actual, anticipated or compulsory counterclaim); *Holmes Group v. Vornado Air Circulation Sys.*, 535 U.S. 836 (2002); *In re Blackwater Sec. Consulting, LLC*, 460 F.3d 576, 584 (4th Cir.), *cert. denied* 549 U.S. 1260 (2007)).

Presently, Plaintiffs allege that their federal claims arise under Title 42 of the Code of Federal Regulations and as a result of the "misappropriation of federal funds." (Pls.' Amended Complaint at ¶¶ 111, 159-161) However, Plaintiffs' Amended Complaint fails in both instances to identify any specific federal statute or other authority Defendants allegedly violated. Plaintiffs first point to a violation of the Code of Federal Regulations, but do not make any specific reference to any aspect of Title 42 Defendants may have violated. Moreover, even if Plaintiffs were to establish some violation of Title 42 regulations by one or more of the Defendants, there is <u>no</u> <u>authority</u> presented by Plaintiffs that the federal *regulations* create a private right of action. *See e.g., Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) ("[W]here the text and structure of a statute provide no indication that Congress intends to create new individual rights, there is no basis for a private suit . . . .")

Likewise, without pointing to violations of federal law, Plaintiffs make cursory statements regarding Defendants' alleged misappropriation of federal funds. In support, Plaintiffs allege "defendants negligently failed to put federal funds to the exclusive use for which they were intended and thereby converted and misappropriated federal funds." (Pls.' Amended Complaint at ¶ 160). The Amended Complaint does not explain how the federal funds were secured by the defendant-counties or the NRSA, what the intended "exclusive use" for the funds was, or how the funds were allegedly converted or misappropriated.[7]

Our Section 1331 jurisprudence teaches that neither an entity's receipt of federal funding, nor the fact that an entity is subject to federal standards or regulations, *necessarily* means that a

---

[7] Defendants assert that Plaintiffs attempt to base the misappropriation of funds claim on a federal criminal statute prohibiting the embezzlement, stealing, purloining, or conversion of anything of value from the United States, 18 U.S.C. § 641. Plaintiffs expressly reject that the Amended Complaint advances this theory of civil liability.

federal question is presented.[8] In *Robb v. United States*, the Fourth Circuit considered whether federal question jurisdiction existed over tort-based claims asserted under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §1346(b).[9] 80 F.3d 884 (4th Cir. 1996). Robb alleged that private physicians performing medical services at a facility operated by the United States fell within the scope of the FTCA. Thus, the court was asked to consider whether the doctors were actually employees or agents of the United States. The district court found that the physicians were independent contractors rather than employees of the United States and, therefore, did not come within the FTCA. *Robb*, 80 F.3d at 886. In affirming dismissal for lack of federal question jurisdiction, the Fourth Circuit identified potentially relevant factors with respect to the independent contractor-employee status, but emphasized that the "real test is control over the primary activity contracted for and not the peripheral, administrative acts relating to such activity." *Id*. at 888-890 (quoting *Wood v. United States,* 671 F.2d 825, 832 (4th Cir.1982)). Because the *Robb* panel held that the "United States exercised no control over day-to day activities" of the physicians, there was no cognizable FTCA claim and no federal question. *Id.* at 890-91. Significantly, in *dictum*, the Fourth Circuit explained that the receipt of federal money and compliance with federal regulations was not dispositive. *Robb*, 80 F.3d at 888 (quoting *United States v. Orleans*, 425 U.S. 807, 814 (1976) (FTCA claim against community action

---

[8] If that were the rule, most any lawsuit involving a state or local governmental entity – both subsidized and regulated - would pose a federal question.

[9] Title 28, United States Code, Section 1346(b)(1) provides in part:

[T]he district courts… shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

agency that was funded by the federal Office of Economic Opportunity properly dismissed). With respect to regulations, the *Robb* panel noted, "[a]lthough such regulations are aimed at assuring compliance with goals, the regulations do not convert the acts of entrepreneurs – or of state governmental bodies – into federal governmental acts." *Id.* (quoting *Orleans*, 425 U.S. at 816.) A mere federal factual connection is not enough to confer federal question jurisdiction.

From *Merrell Dow*, the "federal law in question must be 'sufficiently central' to the claim." 478 U.S. 804 (1986). In this case, the issues presented are more akin to a state law breach of contract claim (or equitable unjust enrichment claim) rather than a violation of federal law.[10] Plaintiffs' allegations are sufficiently central to persons working for the NRSA and not receiving the compensation promised for the work, including wages or salary, related benefits, and credit for government service. (Pls.' Amended Complaint at ¶¶ 111, 159-161) At most, this alleged failure to pay supports Plaintiffs' claims for fraud, common law fraud, promissory fraud, fraud by concealment, misrepresentation, fraudulent inducement, and stems out of an alleged breach of contract. It is not clear from any of Plaintiffs' pleadings that a cause of action arises under federal law, or that a federal law is an essential element to one of Plaintiffs' causes of action.

In contrast to Plaintiffs' contract-driven claims, when a complaint alleges unlawful discrimination, the existence of federal funding is material to a jurisdictional analysis.[11] Indeed,

---

[10] Arguably, the dispositive jurisdictional issue is whether Plaintiffs' state law claims "necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain" without disrupting the balance between federal and state judicial responsibilities. *See Grable*, 545 U.S. at 314.

[11] For example, "Title VI of the Civil Rights Act of 1964 prohibits federally assisted programs from discriminating against individuals on the basis of race, color, or national origin." *Ayanbiola v. Wudske*, 162 F.3d 1154 (4th Cir.1998) (affirming dismissal of complaint for lack of subject matter jurisdiction where plaintiff bringing discrimination suit was unable to demonstrate that defendant businesses were recipients of federal funds and no federal question was present) (unpublished); 42 U.S.C.

a State's receipt of federal funds may be conditioned upon a State's waiver of Eleventh Immunity. *See* 42 U.S.C. § 2000d-7(a)(1)(1994).[12] Plaintiffs' Amended Complaint presents no such allegation.

In conclusion, Plaintiffs' claims do not support federal question jurisdiction.

### 2. 28 U.S.C. § 1332-Diversity Jurisdiction

In order to invoke subject matter jurisdiction based upon diversity jurisdiction pursuant to 28 U.S.C. § 1332, the matter in controversy must exceed at least $75,000, exclusive of interest and costs, and the dispute must be "between citizens of different states..." 28 U.S.C. § 1332(a)(1). Here, there is no diversity of citizenship because the parties are all from the same state, North Carolina. (Pls.' Amended Complaint at ¶¶ 6-95) (listing individual plaintiffs as residents of North Carolina and local government entity defendants seated in North Carolina). Despite Plaintiffs' allegation that damages are in excess of $75,000, both amount in controversy and diversity of citizenship are required. Consequently, there is no subject matter jurisdiction in this Court, and the case must be dismissed.

---

§ 2000d (1994); *see generally,* 14 C.J.S. Civil Rights § 69 (2013) (explaining the workings of the Federally Assisted Programs Subchapter of the Civil Rights Act, Title VI); *see also Ali v. Timmons*, 2004 U.S. Dist. LEXIS 14830, **10-11 (July 23, 2004, W.D.N.Y.) (permitting service of *pro se* plaintiff's discrimination claims based upon denial of benefits against state and local governmental entities).

[12] Section 2000d-7(a)(1) states in relevant part:

> A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973, title IX of the Education Amendments of 1972 ... or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

## IV. ORDER

For all of these reasons, Defendants' Motion to Dismiss pursuant to Rule 12(b)(1) is hereby **GRANTED**. (Doc. 49). Because this Court lacks subject matter jurisdiction over Plaintiffs' causes of action, Defendants' other Rule 12 motions and Plaintiffs' most recent Motion to Amend are not properly before this Court, and they are hereby **DISMISSED** as **MOOT**. (Docs. 47, 51, 59).

Signed: March 28, 2013

Richard L. Voorhees
United States District Judge